UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **TRAVIS NEWBY**, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**AARC, LLC** and **ACSO OF MICHIGAN, INC.**,<br><br>*Defendants.* | Case No.:<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS-ACTION COMPLAINT

Plaintiff, Travis Newby ("Newby" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendant AARC, LLC and ACSO of Michigan d/b/a "Advance America" ("Defendants" or "Advance America"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants. Defendants violated Plaintiff and the putative class-members' rights by placing ringless pre-recorded voicemails to consumers without their prior express consent. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

5. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

6. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

7. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018,

it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

9. This Court has personal jurisdiction over Defendants, as Defendant ACSO is headquartered and systematically conducts business in the State of Michigan. Defendant AARC wholly owns ACSO and avails itself to the State of Michigan when operating ACSO.

10. Furthermore, Defendants called Plaintiff on his "313" area code phone number, associated with the State of Michigan, and this District.

11. Defendants' voicemail to Plaintiff promoted Advance America's store in Highland Park, Michigan, which is within this District.

12. Plaintiff also received the call and listened to the voicemail while in this District.

13. Accordingly, a substantial portion of the events underlying this action occurred within this District.

14. For those reasons, subject matter exists, the Court has personal jurisdiction over all parties and venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

15. Plaintiff Travis Newby is an individual who resides in Detroit, Michigan.

16. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

17. Defendant ACSO of Michigan, Inc. is a Michigan corporation with its headquarters or primary office located at 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

18. Defendant AARC, LLC is a South Carolina limited liability company with its headquarters or primary office located at 322 Rhett St., Greenville, South Carolina 29601.

19. Defendants are both "persons" as that term is defined by 47 U.S.C. §153(39).

20. Upon information and belief, ACSO is a wholly-owned subsidiary of AARC. ACSO and AARC have common employees, officers and directors. The business operations of the companies overlap without distinction and therefore, the two companies worked in concert as a joint enterprise.

21. Defendants acted through their employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

## FACTUAL ALLEGATIONS

22. At all times relevant hereto, Plaintiff owned a cell phone, the number for which was (313) XXX-3550.

23. At all times relevant hereto, Plaintiff used that cell phone primarily for personal and residential purposes, such as speaking with friends and family.

24. In or around December of 2025, Defendants placed a series of calls featuring pre-recorded messages to Plaintiff's cell phone.

25. Those calls include but are not limited to one placed on or around December 5,

2025. In that instance, Defendants placed a call featuring a pre-recorded message to Plaintiff's voicemail, soliciting Defendant's money lending services, which stated as follows:

> "Hi, this is Lisa calling from Advance America in Highland Park. Give me a call to let you know (*sic*) that we may have you pre-qualified for some extra cash. If you are interested, please stop in and visit us at 14130 Woodward Ave. You could also give us a call back at 313-865-2947 for more information. Thanks, bye."

26. Plaintiff could determine that the voicemail was pre-recorded due to the cadence and language, which sounded unnatural, computerized and impersonal.

27. Upon information and belief, Plaintiff received additional calls beyond that identified above.

28. Plaintiff never sought out Defendants' services, payday loans or cash advances.

29. This call was not made for "emergency purposes," but rather for solicitation purposes.

30. Plaintiff was not interesting in applying for a loan, had no pre-existing business relationship with Defendants, and had never provided Defendants with his prior express consent to receive pre-recorded messages.

31. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendant.

**DIRECT AND VICARIOUS LIABILITY**

32. Without the benefit of discovery, Plaintiff understands and therefore alleges Defendants directly placed the call at issue.

33. However, if the call was placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for the call.

34. On May 9, 2013, the FCC determined that telemarketers like Defendants cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

35. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

36. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

37. If Defendants directly sent the calls at issue to Plaintiff and the putative class members, Defendants are directly liable for the placing of those calls.

38. However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

39. If Defendants did not directly send the calls to the putative class members, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

40. Likewise, on information and belief, Defendants also ratified its agents' violations

of the TCPA by accepting proceeds from sales imitated by unlawful telemarketing communications.

41. Defendant scontrolled or had the right to control the marketing activities of those acting on their behalf.

42. Defendants acted as a principal to telemarketing agent(s) who were acting on their behalf.

43. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

44. For the count identified below, if Defendants directly placed the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

**CLASS ALLEGATIONS**

45. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

46. Plaintiff seeks to represent the following class:

> **PRV Class:** All persons in the United States who received one or more calls or voicemails to their cellular or residential telephone numbers which were placed by or on behalf of Defendants, where a pre-recorded or artificial voice was used, from four years prior to the filing of this complaint until the date the Court certifies the class.

47. Excluded from the class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

48. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

49. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

50. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

51. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

52. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

53. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

54. Class members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

55. Common questions of law and fact exist to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendants placed prerecorded voice calls to Plaintiff and the class members;

b. Whether Defendants employ proper internal mechanisms to obtain consumers' prior express consent before placing pre-recorded voice messages;

c. Whether Defendants' conduct violates 47 U.S.C. § 227(b)(1) and the corresponding rules and regulations implementing the TCPA;

d. Whether Plaintiff and the putative class members are entitled to treble or increased damages for each violation based on the willfulness of Defendants' conduct.

56. Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls and prerecorded voicemails to Plaintiff and the putative class members.

57. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

58. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

59. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such

modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

60. Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and class members for which they have no adequate remedy at law.

**COUNT I**
**PRERECORDED MESSAGES IN CALLS TO CELL PHONES**
**47 U.S.C. § 227(b)(1)**

61. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

62. The TCPA provides, in part that: "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) (…) to any telephone number assigned to a (…) cellular telephone (…)" 47 U.S.C. § 227(b)(1)(A)(iii).

63. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

64. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

65. By placing prerecorded voice calls to Plaintiff and the putative class members

without having valid "prior express written consent", Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

66. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

67. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

68. Defendants and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiff and the putative class members' cell phones.

69. Plaintiff and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR JUDGMENT

**WHEREFORE,** Plaintiff, Travis Newby, individually, and on behalf of all others similarly situated, requests the Court grant the following relief against Defendants, as follows:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;

c. Enter judgment in favor of Plaintiff and the Ringless Voicemail Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(b) consistent with proof at trial;

d. Enter a judgment in favor of Plaintiff and the Ringless Voicemail Class that enjoins Defendants from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with proof;

e. Award Plaintiff and the Ringless Voicemail Class such further and other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2026

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (P84351)
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: (877) 600-2112
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*